**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WALTER TORMASI,                          :
                                         :      Civil Action No. 07-5683 (JAP)
            Plaintiff,                   :
                                         :
         v.                              :      **OPINION**
                                         :
GEORGE W. HAYMAN, et al.,                :
                                         :
            Defendants.                  :


**APPEARANCES:**

Plaintiff pro se                  Counsel for Defendant
Walter Tormasi                    Thomas E. Kemble
New Jersey State Prison           Deputy Attorney General of NJ
P.O. Box 861                      R.J. Hughes Justice Complex
Trenton, NJ 08625                 P.O. Box 112
                                  Trenton, NJ 08625

**PISANO**, District Judge

       This matter was opened to the Court by Plaintiff Walter

Tormasi filing a Complaint alleging certain violations of his

constitutional rights.  Thereafter, Plaintiff filed a Second

Amended Complaint [51] which Defendants have moved to dismiss or

for summary judgment.  Briefing on the Motion [91] is complete

and this matter is now ready for decision.

## I.  BACKGROUND

       Plaintiff is confined pursuant to his March 27, 1998,

conviction in the Superior Court of New Jersey, Law Division,

Somerset County for the murder of his mother and related

offenses.  Plaintiff is serving a life sentence with a thirty-

year period of parole ineligibility.  On July 20, 2001, the Superior Court of New Jersey, Appellate Division, affirmed Plaintiff's conviction and sentence in an unpublished opinion. On January 10, 2002, the Supreme Court of New Jersey denied Plaintiff's petition for certification; on May 13, 2002, the Supreme Court of New Jersey denied Plaintiff's motion for reconsideration.

On or about July 8, 2002, Plaintiff filed his first state petition for post-conviction relief.  On December 8, 2005, he filed a supplemental PCR petition, including an appendix of exhibits totaling 520 pages.  On December 29, 2006, he filed a second supplemental PCR petition, including an appendix of exhibits totaling 1209 pages.  These petitions for post-conviction relief were based primarily upon alleged ineffective assistance of counsel, specifically, the failure to present evidence that Plaintiff's father, Attila Tormasi, Sr., and/or a private detective he had hired, committed the murder for which Plaintiff was convicted.[1]  The state PCR court denied relief and on May 26, 2009, the Superior Court of New Jersey, Appellate Division, affirmed the denial of relief.

---

[1] Among the allegedly exculpatory evidence which Plaintiff alleges his attorney should have presented is "The Anarchist Cookbook," which was allegedly present on at least one computer in the home he shared with his father, and which contains instructions for wiretapping, which Plaintiff alleges that his father did to the victim, and for making weapons and bombs.

In early January, 2006, while his state PCR petition was pending, Plaintiff sent out for storage, to his father, four storage containers filled with legal material.  The property room officer inventoried the property[2] and found twelve or fourteen hollowed-out legal briefs.  In addition, an appendix contained a copy of "The Anarchist Cookbook," allegedly referenced in Petitioner's state PCR briefs.  These materials were sent to SID Officer Butler.[3]  Thereafter, Plaintiff was charged with Prohibited Act No. *210, possession of anything unauthorized ("The Anarchist Cookbook"), and conduct which disrupts the orderly running of the prison, Prohibited Acts *.803/*.306 (based upon the hollowed-out briefs that could be used to smuggle contraband).  Following a hearing, Plaintiff was found guilty of all charges.  With respect to the "conduct which disrupts" charge, he was sanctioned with 15 days detention, 365 days in administrative segregation and 365 days loss of commutation time.  With respect to the charge for possession of contraband, "The Anarchist Cookbook," Plaintiff was sanctioned to 10 days detention.  His administrative appeals of these sanctions were

---

[2] These boxes were not designated "legal mail," but were instead retained copies of legal briefs and appendices that had previously been filed with the state courts and that were now being sent to Plaintiff's father for storage.  Thus, they were searched as outgoing packages.

[3] Plaintiff alleges that these documents were confiscated from his cell, after he refused to cooperate in an investigation of another prisoner.  This difference in facts is not material.

denied at all levels.  He then appealed to the Superior Court of New Jersey, Appellate Division, which also upheld the sanctions. Tormasi v. New Jersey Dept. of Corrections, 2007 WL 845921 (N.J.Super. App.Div. March 22, 2007).[4]  Plaintiff did not further appeal.  (Motion [51], Decl. of Thomas E. Kemble, Ex. B.)

Plaintiff's administrative grievances to obtain a return of the confiscated documents (allegedly directed to Defendants Ricci, Trent, and Kandell) were denied at every level of review.[5]

In March 2007, Plaintiff was identified in an internal investigation as possibly being involved in a tax fraud scheme and an escape plot with other inmates.  In connection with this investigation, prison officials came to believe that Plaintiff was in possession of a secured data card purportedly containing information regarding the escape plot.  Accordingly, Plaintiff's cell was searched and a 1-gigabyte secured data card was found in

---

[4] The Opinion of the Appellate Division appears to be limited to the sanctions imposed on the "conduct which disrupts" charges arising from the hollowed-out briefs.  The record presented to this Court does not reflect whether Plaintiff appealed the other sanctions to the Appellate Division.

[5] It is not entirely clear whether the appendix was hollowed out, or whether it simply contained the contraband document. Defendants have appended to their Motion the Declaration of Victor Sierra, in which he states that the confiscated materials included only hollowed-out documents and a copy of "The Anarchist Cookbook," which he describes as a document containing instructions for making bombs, thus, a security threat.  Mr. Sierra further states that three post-conviction relief briefs that were not hollowed out were not confiscated.  Any factual dispute regarding this issue is not material to a decision in this matter.

a hollowed out section of a legal pad.  Plaintiff was charged
with Prohibited Act No. *.009, misuse of electrical equipment,
and Prohibited Act No. *.306, conduct which disrupts.  Following
a hearing, the charges were merged by the hearing officer and
Plaintiff was found guilty.  Plaintiff was sanctioned with 15
days detention, 365 days in administrative segregation, 365 days
loss of commutation time, and permanent loss of contact visits.
Tormasi filed an administrative appeal of the sanction; the
sanction was upheld.

Plaintiff's administrative grievances to obtain a return of
the confiscated materials (allegedly directed to Defendants
Barbo, Wojciechowica, Hayman, Ricci, and Mee) were denied at
every level of review.[6]

In his initial Complaint in this Court, Plaintiff alleged
that the events described above deprived him of his
constitutional right of access to the courts and that the
policies of the prison, not fully articulated in the Complaint,

---

[6] Again, there is a non-material factual dispute regarding
the documents that were seized.  Plaintiff alleges that prison
officials also seized three PCR appendices during the March 2007
search and refused to return them.  Plaintiff admits that one of
these appendices contained a copy of the contraband document,
"The Anarchist Cookbook," which he stated in an interview session
that he had obtained after the 2006 disciplinary proceeding
related to his previous possession of that document.  In support
of their Motion, the Defendants have submitted the Declaration of
Investigator Victor Sierra that he has reviewed all of the
material confiscated from Plaintiff and that the only documents
confiscated from Plaintiff were the hollowed-out documents and
"The Anarchist Cookbook."

were selectively enforced against him in violation of his right to equal protection, because of prison officials' objections to the content of his court filings.  Certain claims were dismissed and Plaintiff was granted leave to submit an amended complaint.

Presently before the Court is Plaintiff's Second Amended Complaint [51].  Plaintiff alleges that all of his state petitions for post-conviction relief were denied by the state courts.  He asserts that he desires to file in this Court a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, but that he is afraid to file such a motion for fear of discipline for possession of contraband and that he is unable to file such a motion without all of the relevant legal documents contained in his appendices.  Plaintiff also alleges that he is fearful of submitting any further state challenges to his conviction, for fear of disciplinary proceedings related to possession of contraband.  Plaintiff alleges that he is fearful of future disciplinary proceedings based upon the <u>contents</u> of legal briefs and appendices because of the past disciplinary proceedings and because interviews with SID officers regarding those events have left him with the impression that his briefs and appendices will be reviewed for content and he will be subjected to disciplinary proceedings if corrections officials object to the content of such briefs and appendices.

Plaintiff alleges that the policies and practices of the defendants, detailed above, deprive him of his First Amendment right to freedom of speech, of his right of access to the courts, and of his right to Equal Protection.  In addition, Plaintiff asserts that Department of Corrections and New Jersey State Prison defendants have failed to adequately train and supervise their subordinate investigators, leading to the afore-mentioned violations of Plaintiff's constitutional rights.[7]

The named defendants include Department of Corrections Commissioner George W. Hayman, DOC Director of Division of Operations James Barbo, New Jersey State Prison Administrator Ronald H. Cathel, JSP Associate Administrator Al Kandell, NJSP Associate Administrator Michelle Ricci, NJSP Associate Administrator Pamela Trent, Special Investigations Division Investigator Derek Butler, SID Investigator Ralph Dolce, SID Investigator William Maginnis, SID Investigator Victor Sierra, and SID Investigator Vincent Wojciechowicz.  Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and all further appropriate relief.

---

[7] Plaintiff admits that he could obtain copies of the confiscated appendices from the state courts, but that he is "afraid" to reacquire them, for fear that they would be declared contraband and that he would be subject to discipline if he reacquired them.  Plaintiff also admits that the time limits have expired for filing any further state petitions for post-conviction relief or federal petitions for writ of habeas corpus. (Brief in Opposition [98] to Motion to Dismiss at ¶¶ 30, 32.)

Defendants have joined in a Motion [91] to dismiss or for summary judgment.  Plaintiff has filed his opposition and this matter is now ready for decision.

## II.   DISMISSAL FOR FAILURE TO STATE A CLAIM

This Court must dismiss, at any time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). See also Fed.R.Civ.P. 12(b)(6), permitting a party to move to dismiss a claim in a civil action for "failure to state a claim upon which relief can be granted."

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

9

In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation."  Id. at 1950.  Thus,
"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

III.   <u>SUMMARY JUDGMENT</u>

A.   <u>Federal Rule of Civil Procedure 56</u>

A district court shall grant summary judgment, as to any

claim or defense, "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(a).

A party asserting that a fact cannot be, or is genuinely

disputed, must support the assertion by citing to particular

parts of materials in the record, or by showing that the

12

materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).
Nevertheless, the court may consider other materials in the
record.  Fed.R.Civ.P. 56(c)(3).

Rule 56(e) of the Federal Rules of Civil Procedure further
provides that:

> If a party fails to properly support an assertion of
> fact or fails to properly address another party's
> assertion of fact as required by Rule 56(c), the court
> may:
>
> (1)  give an opportunity to properly support or address
>      the fact;
>
> (2)  consider the fact undisputed for purposes of the
>      motion;
>
> (3)  grant summary judgment if the motion and
>      supporting materials - including the facts
>      considered undisputed - show that the movant is
>      entitled to it; or
>
> (4)  issue any other appropriate order.

Fed.R.Civ.P. 56(e).

No genuinely triable issue of material fact exists when the
moving party demonstrates – based on the submitted evidence, and
viewing the facts in the light most favorable to the non-moving
party – that no rational jury could find in the non-movant's
favor.  Ambruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir.
1994).  Thus, the threshold enquiry is whether "there are any
genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In deciding whether triable issues of material fact exist, a court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, the moving party bears the burden of showing no genuine issue of material fact, and the non-movant opposes the motion by presenting affirmative evidence to the contrary.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  Under the Rule, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  See also Anderson, 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

14

requirement is that there be no <u>genuine</u> issue of <u>material</u>
fact.").

What the non-moving party must do is "go beyond the
pleadings and by [its] own affidavits, or by the 'depositions,
answers to interrogatories, and admissions on file,' designate
'specific facts showing that there is a genuine issue for
trial.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>see
also</u> <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990)
("The object of [former Rule 56(e), new Rule 56(c)] is not to
replace conclusory allegations of the complaint ... with
conclusory allegations of an affidavit."); <u>Anderson</u>, 477 U.S. at
249; <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358,
1363 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 912 (1993) ("To raise
a genuine issue of material fact, ... the opponent need not
match, item for item, each piece of evidence proffered by the
movant," but must "exceed[] the ' mere scintilla' threshold and
... offer[] a genuine issue of material fact.").

A movant need not affirmatively disprove the other party's
case; he may move on the ground that the non-movant lacks
evidence "sufficient to establish the existence of an element
essential to that party's case." <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322-23 (1986).  Nevertheless, again, it is not
sufficient to support a motion with only conclusory assertions
that the non-movant has no evidence to prove his case.  To the

contrary, as Justice White warned, in his concurring opinion in
Celotex, "It is the defendant's task to negate, if he can, the
claimed basis for the suit." Celotex, 477 U.S. at 328 (Justice
White, concurring). Celotex's progeny reflects that sentiment –
that the movant bears the burden of demonstrating the lack of
evidence in the record to support the non-movant's claims. See,
e.g., Haywood v. Nye, 999 F.Supp. 1451, 1463 (D. Utah 1998);
Andrews v. Crump, 984 F.Supp. 393, 402-03 (W.D.N.C. 1996).

It is not necessary that the case be fully adjudicated on a
motion for summary judgment.

> If the court does not grant all the relief requested by
> the motion, it may enter an order stating any material
> fact - including an item of damages or other relief -
> that is not genuinely in dispute and treating the fact
> as established in the case.

Fed.R.Civ.P. 56(g).

Finally, after giving notice and a reasonable time to
respond, the court may:

> (1)  grant summary judgment for a nonmovant;
>
> (2)  grant the motion on grounds not raised by a party;
>      or
>
> (3)  consider summary judgment on its own after
>      identifying for the parties material facts that
>      may not be genuinely in dispute.

Fed.R.Civ.P. 56(f).

B.   New Jersey Local Civil Rule 56.1

New Jersey Local Civil Rule 56.1(a), as amended in 2008,
requires that on summary judgment motions, both the moving and

non-moving parties furnish a statement identifying what each side deems to be the material facts, so that the Court can determine if a genuine dispute exists.  The commentary to the Rule notes that "the requirement of a separate document represents a change from the practice under the former version of the rule," and that "[t]he Rule 56.1 statement is viewed by the Court as a vital procedural step, since it constitutes and is relied upon as a critical admission of the parties."  The commentary specifies the content and format of the statement: e.g., the assertions must be set out in separately numbered paragraphs; each fact must be supported by a citation to an affidavit.  Here, all parties have submitted the required statements.

IV.   <u>DISCUSSION</u>

A.   <u>Premature Claims</u>

The parties do not agree in their interpretation of whether the Second Amended Complaint is intended to challenge the 2006 and 2007 disciplinary proceedings; Plaintiff asserts that he is challenging only <u>present</u> prohibitions on his possession of the documents contained in his appendices, previously confiscated. To the extent the Second Amended Complaint could be construed to assert any claims challenging the confiscation of documents in 2006 and 2007, which resulted in disciplinary proceedings and loss of commutation time as described above, whether based on the Equal Protection Clause or denial of access to the courts or any

17

other purported constitutional violation, such claims will be
dismissed without prejudice as premature.

In a series of cases beginning with Preiser v. Rodriquez,
411 U.S. 475 (1973), the Supreme Court has analyzed the
intersection of 42 U.S.C.§ 1983 and the federal habeas corpus
statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had
been deprived of good-conduct-time credits by the New York State
Department of Correctional Services as a result of disciplinary
proceedings brought a § 1983 action seeking injunctive relief to
compel restoration of the credits, which would have resulted in
their immediate release.  411 U.S. at 476.  The prisoners did not
seek compensatory damages for the loss of their credits.  411
U.S. at 494.  The Court held that "when a state prisoner is
challenging the very fact or duration of his physical
imprisonment, and the relief he seeks is a determination that he
is entitled to immediate release or a speedier release from that
imprisonment, his sole federal remedy is a writ of habeas
corpus." Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court
addressed a corollary question to that presented in Preiser,
whether a prisoner could challenge the constitutionality of his
conviction in a suit for damages only under § 1983, a form of
relief not available through a habeas corpus proceeding.  Again,

18

the Court rejected § 1983 as a vehicle to challenge the

lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has <u>not</u> been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will <u>not</u> demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

19

More recently, in Edwards v. Balisok, 510 U.S. 641 (1997), the Supreme Court applied the lessons of Preiser and Heck to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits. Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

Here, a favorable outcome on constitutional challenges to the 2006 and 2007 confiscations of Plaintiff's hollowed-out documents and secured data card, which resulted in disciplinary proceedings and loss of commutation time, would necessarily imply the invalidity of the challenged disciplinary proceedings and would affect the calculation of his sentence. These challenges to the loss of good time credits must be brought in a habeas action following exhaustion of state remedies.[8] Accordingly, any § 1983 claims based upon these events are premature and must be dismissed without prejudice.

---

[8] The Court notes that Plaintiff appears to have abandoned his state remedies prior to their exhaustion, which would likely preclude any federal habeas relief and, as a result, any federal relief in a civil rights action.

B.   <u>First Amendment Claim</u>

Plaintiff alleges that he undertook administrative remedies to recover appendices that he alleges were confiscated in 2006 and 2007, documents that were not hollowed-out but that included "The Anarchist Cookbook."  With respect to the appendices allegedly confiscated in 2006, Plaintiff states that Defendants Pamela Trent and Al Kandell denied his administrative appeals. With respect to the appendices allegedly confiscated in 2007, Plaintiff states that SID Officer Wojciechowicz advised Plaintiff that the appendices contained written content disapproved of by DOC, NJSP, and SID defendants.  Additionally, Plaintiff alleges that SID Officer Wojciechowica threatened to take disciplinary action against Plaintiff, advising him that possession of the appendices violated institutional rules and regulations. (Amended Complaint at ¶ 24.)  Plaintiff alleges that at the end of various interrogations in 2007, he was left under the impression that his possession of the PCR appendices subjected him to various disciplinary charges.  Plaintiff alleges that, by these actions, the defendants have deprived him of his right to freedom of speech.  To be clear, Plaintiff states that he is concerned, in this action, only with the fact that confiscation of the appendices to his state PCR briefs has put him in fear of obtaining duplicates of those documents for use in future state PCR or federal habeas petitions, because acquisition of new

copies might subject him to further disciplinary proceedings. Defendants dispute that they ever confiscated any appendices, other than "The Anarchist Cookbook," and that, in any event, they no longer have any copies.

In support of his claim, Petitioner attaches, to his Brief [98] in opposition to the Motion [91] to dismiss, the transcript of his interrogation on May 3, 2007.  (Brief [98], Ex. L.)  The transcript reflects that Plaintiff sent a letter to SID regarding the confiscation of his legal paperwork and that he wanted to discuss that to ensure that no charges would be brought regarding the paperwork.  Plaintiff specifically raised his concern about "The Anarchist Cookbook."  There ensued a short discussion about how Plaintiff had obtained a copy of the contraband book and whether "The Anarchist Cookbook" was really a part of Plaintiff's criminal case.  Thereafter, the interrogation turned to discussion of matters related to the contraband data card, the hollowed-out legal pad, the suspected escape plot, and the alleged tax scheme.  At no time during this interview, apart from the discussion of "The Anarchist Cookbook," did the discussion turn to any other aspect of Plaintiff's criminal case, the content of the briefs or appendices, or any objection to the content of the briefs or appendices.

The Supreme Court recognized in Turney v. Safley, 482 U.S. 78 (1987) that imprisonment does not automatically deprive a

prisoner of certain constitutional protections, including those of the First Amendment, acknowledging at the same time that the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere.  <u>See also</u> <u>Beard v. Banks</u>, 548 U.S. 521 (2006) (reviewing prison regulations limiting access to newspapers, magazines, and photographs by inmates in long-term segregation unit).

When a prison regulation or practice impinges on inmates' or free citizens' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  The Supreme Court has identified four factors to be considered in determining the reasonableness of the regulation or practice at issue.

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. ... Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.  Moreover, the governmental objective must be a legitimate and neutral one.  ...

> A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates.  ...

> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.  ...

> Finally, the absence of ready alternatives is
> evidence of the reasonableness of a prison regulation.
> By the same token, the existence of obvious, easy
> alternatives may be evidence that the regulation is not
> reasonable, but is an "exaggerated response" to prison
> concerns.  This is not a "least restrictive
> alternative" test.  ...

Turner, 482 U.S. at 89-90  (citations omitted).

Here, as an initial matter, except with respect to "The Anarchist Cookbook," Plaintiff has failed to present to this Court any evidence that he has suffered discipline or intimidation related to the content of his state court briefs or appendices.  Except with respect to "The Anarchist Cookbook," the entire administrative and judicial record of his prior disciplinary proceedings is based upon his possession of contraband that presents a security threat, including hollowed-out documents and the secured data card.  Except with respect to "The Anarchist Cookbook," nothing in the transcript presented by Plaintiff suggests any concern on the part of corrections officials about any aspect of the content of Plaintiff's briefs and appendices.  Thus, even if the defendants did previously confiscate his appendices, deliberately or inadvertently, Plaintiff has failed to present any evidence suggesting that he is under a threat of discipline, in violation of the First Amendment, for possession of any document in his appendices other than "The Anarchist Cookbook."

24

Moreover, prison policies prohibiting the possession of "The Anarchist Cookbook," a document which Plaintiff admits contains information on how to conduct wiretaps and to make weapons and bombs, are valid, rational responses to the security threat presented by the book.  Plaintiff states that he wanted the book only for use in future legal proceedings, but Plaintiff had already completed briefing in his state PCR petition when the book was confiscated; thereafter, he obtained a second copy of this contraband book by means he refused to disclose.  To the extent Plaintiff ever really desired to submit additional PCR petitions or federal habeas petitions, he could have referred to his prior briefs for the references and citations to "The Anarchist Cookbook."  If any court needed a copy of the book, Plaintiff could have arranged for a copy to be sent by somebody outside the prison or could, at that time, have applied for leave to obtain and send a copy of the book to the court.  Thus, the prohibition on possession of this book, insofar as Plaintiff is concerned, did not deprive him of alternative means of referring to the book in the contemplated future challenges to his conviction.  Plaintiff's suggestion that he should have been confined indefinitely in a Management Control Unit so as to retain possession of "The Anarchist Cookbook," just in case he ever wanted it in the future, does not present a reasonable accommodation of his desire to possess the book; for example,

25

while the possibility of circulation of the book might have been reduced by such a placement, Plaintiff has already personally demonstrated that prisoners can obtain copies of this prohibited book.  The threat presented by the book is more completely eliminated by its confiscation.  It would not be a rational response for prison authorities to establish a system of segregated housing for prisoners who want to possess contraband that presents a threat to the security of the institution.  The prison policy prohibiting possession of "The Anarchist Cookbook" is valid under <u>Turner</u>.  Thus, to the extent Plaintiff is subject to discipline if he reacquires a copy of "The Anarchist Cookbook," that prospect does not violate his right to freedom of speech under the First Amendment.  Defendants are entitled to summary judgment with respect to Plaintiff's claim that they have violated his rights under the First Amendment.

C.   <u>Access to Courts Claim</u>

Plaintiff asserts that, without his appendices, apparently including "The Anarchist Cookbook," he could not pursue further state post-conviction relief or federal habeas relief and that the time for pursuing such relief has lapsed.  Thus, he contends that the Defendants have deprived him of his right of access to the courts.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government

26

for redress of grievances.  <u>Bill Johnson's Restaurants, Inc. v.
NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional
guarantee of due process of law has as a corollary the
requirement that prisoners be afforded access to the courts in
order to challenge unlawful convictions and to seek redress for
violations of their constitutional rights.  <u>Procunier v.
Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>,
<u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also
Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
<u>Bounds</u>] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any <u>other</u> litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of

27

conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355
(1996) (emphasis in original).

There is no "abstract, freestanding right to a law library
or legal assistance, [and] an inmate cannot establish relevant
actual injury simply by establishing that his prison's law
library or legal assistance program is subpar in some theoretical
sense. ... [T]he inmate therefore must go one step further and
demonstrate that the alleged shortcomings in the library or legal
assistance program hindered his efforts to pursue a [non-
frivolous] legal claim. He might show, for example, that a
complaint he prepared was dismissed for failure to satisfy some
technical requirement which, because of deficiencies in the
prison's legal assistance facilities, he could not have known.
Or that he had suffered arguably actionable harm that he wished
to bring before the courts, but was so stymied by inadequacies of
the law library that he was unable to file even a complaint."
<u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided
by the state to indigent prisoners, the Supreme Court has stated,
"[i]t is indisputable that indigent inmates must be provided at
state expense with paper and pen to draft legal documents, with
notarial services to authenticate them, and with stamps to mail
them. ... This is not to say that economic factors may not be
considered, for example, in choosing the methods used to provide

meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying.  [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel.  See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff has failed to show actual injury, as he has failed to demonstrate that the intended collateral challenges to his conviction, whether in state court or federal court, are potentially meritorious.  Indeed, as to the claims he has already pursued in state court, and that he presumably seeks to raise in a federal habeas petition, state trial and appellate courts have

29

already determined that Petitioner is not entitled to relief on
those claims; Petitioner does not explain how those state court
determinations could be set aside in a federal habeas
proceeding.[9]  As to claims he had not previously raised in state
collateral proceedings, Plaintiff fails even to describe those
claims or to explain how he anticipated overcoming the time bar
he acknowledges would otherwise have barred any further state
collateral challenges to his conviction.  It is not sufficient at
the summary judgment stage for Plaintiff merely to make
conclusory statements that he wants to assert further collateral
challenges to his conviction.  Defendants are entitled to summary
judgment on this claim.

D.   <u>Equal Protection Claim</u>

     Plaintiff alleges that the policies described in his Second
Amended Complaint are selectively enforced against him, because

---

     [9] Indeed, the Court notes the very high threshold that
Plaintiff must traverse to obtain federal habeas relief.  With
respect to any claim adjudicated on the merits in state court
proceedings, it is not sufficient for Plaintiff merely to show
that the state court decision was erroneous.  The writ shall not
issue unless the state adjudication of the claim

     (1) resulted in a decision that was contrary to,
     or involved an unreasonable application of, clearly
     established Federal law, as determinated by the Supreme
     Court of the United States; or

     (2) resulted in a decision that was based on an
     unreasonable determination of the facts in light of the
     evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

of prison officials' objections to the content of his briefs and appendices, and are not enforced against other similarly situated prisoners.  The Court construes this as an allegation that Plaintiff has been subjected to "class of one" discrimination.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Its purpose "is to secure every person ... against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Thus, an individual may assert a "class of one" equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id.

"Class of one" claims lie "in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply."  LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980).  The Court of Appeals for the Third

Circuit has held, in one of few precedential opinions addressing the "class of one" theory:

> Our court has not had the opportunity to consider the
> equal protection "class of one" theory at any length.
> From the text of <u>Olech</u> itself, however, it is clear
> that, at the very least, to state a claim under that
> theory, a plaintiff must allege that (1) the defendant
> treated him differently from others similarly situated,
> (2) the defendant did so intentionally, and (3) there
> was no rational basis for the difference in treatment.

<u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006).

To survive dismissal, a "class of one" claim need not "name names" of persons who have been treated differently; however, "general accusations and the invocation of the Equal Protection Clause are not enough."  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 243-246 (3d Cir. 2008).

Here, Plaintiff has presented no evidence whatsover to support an equal protection claim.  There is no evidence that he has been treated differently than any similarly-situated prisoner.  Defendants are entitled to summary judgment on this claim.

E.   <u>Failure to Train/Supervise</u>

Plaintiff alleges that defendant officials of New Jersey State Prison and the New Jersey Department of Corrections have failed to adequately train and supervise the Special Investigations Division investigators.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional

violations, that the failure to train ... can fairly be said to represent official policy," <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable, <u>Id.</u>  Here, however, Plaintiff has failed to demonstrate any violation of his constitutional rights.  Hence, he has failed to demonstrate that any supervisory level defendant failed to properly train and supervise the investigators.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program.  ...  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... .  Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

<u>Id.</u> at 390-91.  Here, even if Plaintiff had demonstrated that one or more of the investigator defendants had violated his rights, which he has not, Plaintiff has nevertheless failed to present any evidence establishing that the training and supervision programs are themselves deficient.  The Defendants are entitled to summary judgment on this claim.

F.   Request for Prospective Injunctive Relief

Plaintiff has requested prospective injunctive relief enjoining the defendants from reading court filings in his criminal case, from confiscating court filings if they contain content of which the defendants disapprove, and from taking or threatening to take disciplinary action against Plaintiff for possessing his confiscated court filings.

The claim for injunctive relief fails because Plaintiff fails to establish that he has standing to pursue such a claim. In order to set forth a viable claim in federal court, a plaintiff must satisfy both the Article III constitutional minimum of a "case or controversy" and any prudential considerations set by the courts.  See Disabled Patriots of America, Inc. v. City of Trenton, 2008 WL 4416459, *2-*3 (D.N.J. 2008).  To satisfy Article III standing, a plaintiff must demonstrate (1) that he has suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, that the injury has to be fairly traceable to the defendant's challenged action; and (3) it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).  "Since [the elements of

34

standing] are not mere pleading requirements but rather an
indispensable part of the plaintiff's case, each element must be
supported in the same way as any other matter on which the
plaintiff bears the burden of proof." Lujan, 504 U.S. at 561.

To obtain prospective injunctive relief, a plaintiff must
demonstrate a "real and immediate threat" of future injury in
order to satisfy the "injury in fact" requirement. City of Los
Angeles v. Lyons, 461 U.S. 95, 103-04 (1983). "Past exposure to
illegal conduct does not in itself show a present case or
controversy regarding injunctive relief." Brown v. Fauver, 819
F.2d 395, 400 (3d Cir. 1987).

Here, Plaintiff has not established that his constitutional
rights have been, or are likely to be, violated. To the
contrary, the four boxes containing his briefs and appendices
were initially searched, not as legal mail, but as packages being
sent out for storage. His cell was later searched in connection
with information that he was involved in an escape plot. In both
instances, contraband in the form of hollowed-out documents were
discovered. The discipline to which Plaintiff was subjected was
based primarily upon the hollowed-out nature of Plaintiff's
documents, not their content. To the extent documents were
confiscated based upon content, "The Anarchist Cookbook," the
prohibition against possession of that document does not violate
the First Amendment. Plaintiff has presented no evidence that he

35

has been unconstitutionally subjected to discipline, or threatened with future discipline, based upon the content of the arguments or documents in his briefs or appendices.

Plaintiff has failed to present any evidence that he is subject to a real and immediate threat of future injury based upon possession of his briefs or appendices, which the exception of "The Anarchist Cookbook;" and this Court finds that the prohibition against possession of "The Anarchist Cookbook" does not violate the First Amendment.  Plaintiff is not entitled to any prospective injunctive relief.

V.   <u>CONCLUSION</u>

For the reasons set forth above, any challenges to the 2006 and 2007 disciplinary proceedings are dismissible as premature and Defendants are entitled to summary judgment as to all other claims.   An appropriate order follows.

/s/ Joel A. Pisano
Joel A. Pisano
United States District Judge

Dated:  August 22, 2011